OPINION
Appellant, Ace Lakefront Properties, Inc. (hereinafter "Ace Lakefront"), appeals from a judgment of the Common Pleas Court of Lake County entered on September 18, 1997. In May, 1994, appellee, Michael J. Geier ("Geier"), brought an action under the Fraudulent Transfer Act against Ace Lakefront Properties, Inc. ("Ace Lakefront"), National GG Industries, Inc. ("National GG"), Louis Wagner ("Wagner"), John D. Gnandt ("Gnandt") and others. Judgment was granted for Geier against defendants National GG and Wagner, jointly and severally, in the amount of $244,066, and a judgment lien was imposed on the parcel of land transferred, owned by defendant Ace Lakefront. In a companion case, Wagner has appealed the judgment for money damages.[1] Ace Lakefront is appealing the imposition of the judgment lien.
In 1983, Geier and Gnandt formed the corporation National GG for the purpose of buying a property in Fairport Harbor, Ohio. To finance the purchase of the property, National GG took a loan from Huntington Bank for $225,000.
In October of 1986, Geier sold his shares in National GG to Wagner. In exchange for Geier's shares, Wagner took over the Huntington Bank loan obligation and National GG issued a promissory note for $73,000 to Geier, the principal being payable in 1991. Under its new structure, Wagner owned (45%), Gnandt (45%) and Wagner's attorney, David King (10%). In conjunction with his purchase of stock, Wagner made a working capital loan to National GG. A term of the transaction was that until both the Huntington Bank and Wagner loans were paid in full, Wagner was to retain sole control of corporate decisions.
By 1988, problems developed between Wagner and Gnandt, in part because Wagner was excluding Gnandt from the operation of the business and would not give him access to the company's financial statements. In 1990 litigation began between the parties to this case, and parties not discussed herein, involving multiple claims and counterclaims. In May of 1993 the lawsuits were settled. All the defendants in this case participated in the settlement negotiations. Geier was not included in the settlement negotiations, but a decision was taken with respect to his counterclaim.
To settle with Gnandt and a company Gnandt controlled, Ace Demolition, National GG and Wagner transferred the Fairport Harbor property to Ace Lakefront, a company designated by Gnandt. This company, which Gnandt controlled, was created solely for the purpose of taking title to the property. At the time of the transfer the property was National GG's only valuable asset. As part of its plan, National GG dismissed its claims against Geier and confessed judgment for the full amount of Geier's counterclaim (the promissory note plus interest beginning in 1986). But the result of the settlement between the parties excluding Geier was that National GG had little or no remaining value. The conveyance of the property to Ace Lakefront effectively rendered Geier's judgment worthless. The transfer occurred before the journalization on June 14, 1993 of the judgment in favor of Geier. On June 22, 1993, Geier filed his Certificate of Judgment in Lake County to perfect his lien on the property. Geier then discovered the property was no longer owned by National GG.
On May 18, 1994, Geier filed suit in Lake County alleging a fraudulent conveyance and an unlawful preference of certain corporate creditors over himself. His suit named National GG, Wagner, Gnandt, Ace Lakefront, and others as defendants. A jury trial began on December 3, 1996. At the close of evidence, the court ruled that money damages were not recoverable against Ace Lakefront, but determined Geier had a remaining equitable claim against Ace Lakefront. The court bifurcated the equitable claim, dismissing Ace Lakefront from the jury portion of the case, and retaining jurisdiction to hear the equitable portion at a later date. Ace Lakefront did not object to the bifurcation or the court's retention of jurisdiction over the claim. Geier's cases against Wagner and National GG were submitted to the jury.
With respect to National GG and Wagner, the court submitted three interrogatories to the jury requesting specific findings of fact. First, the jury was asked if the Fairport Harbor property constituted substantially all of the assets of National GG at the time of its transfer. Second, the jury was asked if Wagner had so complete control over National GG that the company had no separate mind, will or existence of its own. Third, the jury was asked if the transfer of the property to Ace Lakefront was made to hinder, delay or defraud a creditor of National GG. The jury answered the three interrogatories unanimously in the affirmative. The jury returned a verdict in favor of Geier. The corporate veil was pierced and the court entered judgment against Wagner and National GG, jointly and severally, awarding Geier $244,300 (of which $14,766 was attorneys fees).
A hearing was held on September 5, 1997 to resolve the remaining issue of the imposition of a lien on the property owned by Ace Lakefront. No further evidence was taken. Both parties presented argument on the issue and each submitted a brief. On September 18, 1997, the court entered judgment in favor of Geier. He was granted a judgment lien on the property for $229,300. In any subsequent foreclosure proceedings, the amount recoverable was to be reduced in proportion to any payments Geier received from National GG or Wagner. Ace Lakefront filed a timely notice of appeal, and presents the following assignment of error:
 "The trial court erred to the prejudice of Defendant Ace Lakefront Properties, Inc., when it entered an order placing a lien upon the property which had been conveyed to the said Defendant."
Ace Lakefront contends that the nature of the relief granted, the lien, is equitable. The trial court did indicate it was acting in equity when it bifurcated this issue to be tried to the court. Ace Lakefront did not object to the bifurcation and the court's retention of jurisdiction. Ace Lakefront now argues it was incumbent upon Geier to present evidence at the September 5, 1997, hearing demonstrating that its remedy at law was inadequate in order to obtain relief in equity, which he did not do. Ace Lakefront argues it was improper for the court to grant a lien on its property in the absence of evidence showing the remedy at law is inadequate. Its argument is premised on Ace Lakefront's preliminary conclusion that the court granted relief in this case under R.C. 1336.07(A)(3). However, in its judgment entry, the court did not specify which part of R.C. 1336.07 it based its ruling upon.
R.C. 1336.07, Remedies of creditor, states:
 "(A) In an action for relief arising out of a transfer or an obligation that is fraudulent under section 1336.04 or 1336.05 of the Revised Code, a creditor, or a child support enforcement agency on behalf of a support creditor, subject to the limitations in section 1336.08 of the Revised Code, may obtain one of the following:
 Avoidance of the transfer or obligation to the extent necessary to satisfy the claim of the creditor;
 An attachment or garnishment against the asset transferred or other property of the transferee in accordance with Chapters 2715. and 2716. of the Revised Code;
 Subject to the applicable principles of equity and in accordance with the Rules of Civil Procedure, any of the following:
 An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
 Appointment of a receiver to take charge of the asset transferred or of other property of the transferee;
 Any other relief that the circumstances may require.
 If a creditor or a child support enforcement agency has obtained a judgment on a claim against the debtor, the creditor or agency, if the court so orders, may levy execution on the asset transferred or its proceeds in accordance with Chapter 2329. of the Revised Code.
Ace Lakefront argues that under the plain language of the statute the plaintiff is limited to one of the three remedies specified in division (A) of R.C. 1336.07. Following that logic, and based upon the fact the court awarded both money damages and the placement of a lien on the property, it reasons the court must have relied upon the authority of R.C. 1336.07(A)(3)(c). It argues the language "[a]ny other relief that the circumstances may require" is the only basis upon which relief under subsection (A) of R.C. 1336.07 could encompass both money damages and a lien. Based on this premise, it refers to the qualification set forth in division (A)(3) of R.C. 1336.07 which states that all such relief is "[s]ubject to the applicable principles of equity * * *." Therefore, Ace Lakefront argues, under the principles of equity it was incumbent upon Geier to make a showing that the remedy at law was inadequate before he would be entitled to a lien on the property. The court did not require, and Geier did not proffer any such evidence.
The internal logic of Ace Lakefront's argument is compelling. However, it fails to account for division (B) of R.C. 1336.07, which cannot be ignored. In State of Ohio v. Wilson (1997),77 Ohio St.3d 334, the Supreme Court stated, "[i]n looking to the face of a statute or Act to determine legislative intent, significance and effect should be accorded to every word, phrase, sentence and part thereof, if possible." Id. at 336, 337. "It is a basic tenet of statutory construction that `the General Assembly is not presumed to do a vain or useless thing, and that when language is inserted in a statute it is inserted to accomplish some definite purpose.'" State v. Wilson (1997), 77 Ohio St.3d 334,336, quoting State ex rel. Cleveland Elec. Illum. Co. v.Euclid (1959), 169 Ohio St. 476, 479. "In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." Wilson, at 336, citing MacDonald v. Bernard (1982), 1 Ohio St.3d 85, 89.
To paraphrase the statute, division (B) grants the authority to the court to authorize execution on the asset transferred when the creditor has obtained a judgment against the debtor. What the statute authorizes is clarified by the substitution of the parties' names for the generic terms in the statute, as follows:
 (B) If Geier has obtained a judgment on a claim against National GG/Wagner, Geier, if the court so orders, may levy execution on the Fairport Harbor property or its proceeds in accordance with Chapter 2329. of the Revised Code.
This section embraces all of the operative facts comprising the issue on appeal. First, in a successful action under R.C. Chapter 1336, it necessarily follows that the debtor is no longer in possession of the asset transferred, hence the title "Fraudulent Transfer Act." The whole point of the statute is to prevent a debtor from avoiding payment of the debt through the abuse of various legal forms. To initiate an action under this Chapter, it is a prerequisite that the asset be in the possession of an entity other than the debtor, i.e. a transferee. R.C. Chapter 1336 protects the interests of bona fide transferees with R.C. 1336.08. Under this section a transfer is deemed not fraudulent where the transferee took the property in good faith for reasonably equivalent value. In this case it was determined that Ace Lakefront was not a bona fide transferee, that the transfer was fraudulent, and this is a point which Ace Lakefront does not dispute in the present appeal. Under this section, the creditor may have both a judgment against the debtor and levy execution on the asset transferred, which is never in the possession of the debtor.
Secondly, with the language "if the court so orders", the statute reposes the authority to levy execution on the asset transferred with the trial court. The decision is discretionary. In construing a statute, a court may consider the purpose to be accomplished by the statute. State v. S.R. (1992), 63 Ohio St.3d 590,594-595. The Fraudulent Transfer Act is intended to prevent two malfeasants from thwarting the legitimate attempt of a third party to collect a debt he is owed. In placing the discretion with the trial court to determine whether, when a judgment has already been obtained against the debtor, the creditor may attach the asset transferred, the statute authorizes the court to impose a sanction which may insure the creditor is repaid. In many, if not all, fraudulent transfer situations, the debtor no longer has sufficient assets to satisfy a judgment. The court's proper objective is to make the creditor whole. R.C. 1336.07(B) specifically authorizes the court to impose an order allowing the creditor to levy execution on the property transferred. Therefore, it was appropriate for the court to bifurcate this issue for a separate adjudication and reserve this judgment to itself. Under the plain language of the statute, the judgment reserved to the court is whether or not to levy execution on the asset transferred. In R.C. 1336.07(B), as opposed to R.C.1336.07(A)(3), there is no language requiring the consideration of equitable principles. It is not a question of whether the remedy at law is adequate, but rather the discretion to employ a means to enforce the prior valid judgment entry, making it meaningful.
The first step in levying execution on a property is the placement of a lien on the property. R.C. 1336.07(B) sets forth the procedure for execution, stating it is to be carried out in accordance with R.C. Chapter 2329. R.C. Chapter 2329 creates a judgment lien in all cases where there is a prior judgment at law. Because R.C. 1336.07(B) states the execution on the asset transferred is to be done in accordance with this section, we conclude that the trial court had the authority to grant a lien without requiring a further showing by Geier that his remedy at law was inadequate.
Finally, we would note that in the context of a successful fraudulent transfer action, the transferee is never an innocent party. They do not have clean hands. The law abhors a fraud. The courts will relieve against fraud in any form in which their modes of proceeding can reach it.
The judgment of the trial court is affirmed.
FORD, P.J., CHRISTLEY, J., concur.
[1] The judgment of the trial court was affirmed on December 23, 1999.